THE STATE OF KANSAS v. WILLIAM SHIVE AND B. UNDERWOOD.

**No. 10872.**

CIRCUMSTANTIAL EVIDENCE— *an envelope, found near scene of robbery, addressed to one joint defendant and bearing return card of the other, not admissible where not shown to have ever been in possession of either of the accused.* Where two persons jointly accused of a crime defend upon the ground of absence at the time of its commission, but testimony is offered tending to prove their presence at a point a few miles from the scene of its occurrence a few hours previous to its commission, it is error to receive in evidence a mailed envelope addressed to one of them and having on it the return card of the other, where its genuineness as sent by one and received by the other is not shown, nor the connection of the receiver with it shown by proof of its previous possession by him, or inferable from any other fact than his name and address written thereon.

Error from Reno District Court. Hon. M. P. Simpson, Judge. Opinion filed December 11, 1897. *Reversed.*

*L. C. Boyle*, Attorney General, *L. M. Fall,* County Attorney, and *Z. L. Wise,* for the State.

*Martin & Roberts*, for appellants.

DOSTER, C. J. This is an appeal from a sentence of conviction for robbery. Just after dark on the twenty-third of February, 1897, two masked men entered the house of Jacob Willems, a farmer residing in the northeastern part of Reno County, and robbed

him and his son, Jacob J. Willems.   They took eighty-
five or ninety dollars in gold and paper currency be-
longing to Jacob Willems, and one dollar and eighteen
cents of silver and pennies which belonged to Jacob
J. Willems, the son.   A few days after the robbery,
a neighbor of the Willems found some pieces of paper
near a haystack, about three and one-half miles south
of their house.   These pieces of paper were pasted
together by the finder, and appeared to form an en-
velope addressed to the defendant Shive at North Mar-
ket Street, Wichita, Kan., on which street he lived,
with a card directing it to be returned to No. —
East Tenth Street, Hutchinson, Kan., on which street
the defendant Underwood lived.   It was stamped and
postmarked at Hutchinson, but the date of mailing
was too indistinct to be read.   At the trial, three or
four persons identified the defendants as having been
seen, on the afternoon of the robbery, at the haystack
where the pieces of envelope were found.   There was
no evidence that this envelope had ever been in the
possession of either of them.   There was no evidence
that the writing upon it was the writing of either of
them.   There was no evidence to connect the en-
velope, its contents, or the writing upon it, with
either of them.   The only evidence which connected
either of the defendants with the pieces of paper
found at the haystack and pasted together and intro-
duced in evidence, was the testimony of the three or
four witnesses who claimed to have seen them at the
haystack the afternoon of the day in the evening of
which the robbery occurred.

The defendants objected to the introduction of the
envelope because incompetent, irrelevant, and imma-
terial, and because it had not been connected with ei-
ther of them by proof of their ownership or possession
of it, nor by proof of their handwriting upon it.   These

objections were overruled; the court remarking at the time : "They are only competent as a circumstance." A number of witnesses testified that the defendants were present in the city of Hutchinson at the hour when the offense was committed, and that they were present there at the time the witnesses for the State identified them as being at the haystack where the pieces of envelope were found. The admission in evidence of this envelope constitutes the ground of the principal claim of error. No case directly in point has been called to our attention, but we are constrained to say that the admission of this torn envelope in evidence was error. It was admitted as a circumstance to prove that the defendants were in the vicinity of the place where the crime was committed, a short time before its commission, and not in the city of Hutchinson at that time, as testified to by some of the witnesses. If there is between it and the defendants that logical connection which satisfies the rigid requirements of the criminal law, its admission was proper; otherwise not.

A robbery having been committed, and the defendants being charged with its commission, proof of the fact that they were in the vicinity where it occurred was, of course, logically pertinent. Pieces of paper were found at a point a few miles from the scene of the crime. When they were put together, the name of one of the defendants and his post-office appeared addressed thereon, and the return-card of the other defendant likewise appeared on it. No evidence was offered showing that the defendant to whom the envelope was addressed had ever had it in his possession, nor was any evidence offered tending to show that the other defendant addressed the envelope to him, or that the two defendants were, or ever had been, in correspondence with each other. The jury, however, were

50—58 KAN.

permitted to infer that, because this envelope, thus unconnected with the defendants, was found at a place where they had been seen the day of the crime, they were there, and had left the paper at the place where found. Admitting for the moment that the inference can be made against the defendant Shive, because the envelope was addressed to him, can it be made against the defendant Underwood, who addressed it to him, and who, upon mailing it, parted with it, and from thence became entirely disconnected from it? It cannot be that such inference exists as to him. Nor does the inference appear less doubtful as to the defendant Shive, when the question is closely viewed. If the envelope had been seen in his possession at any time, it might be different. If the address upon it had been identified as the handwriting of the defendant Underwood, and it had been shown that they were in correspondence, the case might be different. But neither of these circumstances, nor any circumstance connecting Shive with the receipt or possession of the envelope, was shown. If a pocketbook had been found at the haystack and identified as belonging to Shive, there would be an inference that he had dropped it there. If a handkerchief, proved to belong to him, or a piece of clothing matching clothing worn by him, had been found at the place in question, there would be an inference derivable therefrom that he was at the place. But where no such connection between the defendant and the article found has been proved, the inference of his presence at the place where found is not deducible. No connection between the defendant and the paper being shown, he was unable to explain it. The State never having shown that he had it or was responsible for it, he was not called upon to explain how he parted with it, or how it came to be at the place where found. The presump-

tion that, according to the known course of the postal service, an addressed and stamped letter reaches its destination and is received by the person to whom addressed, will not, in our judgment, suffice to show that the envelope inclosing such letter, found thereafter many miles from the place of residence of the addressee, was left by him at the place where found. Letters of correspondence are frequently preserved, but the envelopes inclosing them are rarely retained, according to the habit of most persons. We are not permitted, at least against a person accused of crime, to tack one presumption upon another and from the series infer guilt against him. The very contrary is the rule.

" The facts alleged as the basis of any legal inference must be clearly proved, and indubitably connected with the *factum probandum*. . . . No weight, therefore, must be attached to circumstances which, however they may excite conjecture, do not warrant belief. Occurrences may be mysterious and justify vehement suspicion, and yet the supposed connection between them may be but imaginary, and their coexistence indicative of accidental occurrence merely, and not of mutual correlation. . . . Every circumstance, therefore, which is not clearly shown to be really connected as its correlative with the hypothesis it is supposed to support, must be rejected from the judicial balance ; in other words, it must be distinctly established that there exists between the *factum probandum* and the facts which are adduced in proof of it, a real connection, either evident and necessary, or so highly probable as to admit of no other reasonable explanation." Wills Circumstantial Evidence, 173, 174.

" The fact that an unanswered letter or other paper is found in the custody of a party, but not acknowledged by him, is not ground for the admission of the paper as evidence against him. Were it admitted, an innocent man might, by the artifice of others, be charged with a *prima facie* case of guilt which he might find it difficult to repel." Wharton's Criminal Evidence, § 682.

"In a portmanteau, not proved to belong to the prisoner on trial, was found a paper folded like a letter, and containing in the inside what purported to be an inventory of goods pawned at different times. The inventory was not in the prisoner's handwriting; but on the outside of the paper his name, and the word 'private,' both in his handwriting, were indorsed. It was ruled that the contents of the paper were not admissible against him." *Reg. v. Hare,* 3 Cox C. C. 247.

"A letter found on the person of the defendant when arrested for robbery, containing damaging statements and warnings to keep out of reach of the officers, and identified by a witness as having been written by him to defendant, is inadmissible in the absence of evidence that defendant answered it, or acted on the information contained therein." *People v. Colburn,* 38 Pac. Rep. (Cal.) 1105.

Other claims of error are made. We have examined them but do not find any of them well founded. For the error pointed out, however, the sentence of conviction is reversed, and a new trial ordered.